**UNITED STATES of America,
Appellee,**

v.

**Norman H. EGENBERG, Defendant-Appellant.**

**No. 600, Docket 35447.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1971.

Decided March 26, 1971.

James T. B. Tripp, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Henry Putzell, III, Charles B. Updike, Asst. U. S. Attys., on the brief), for appellee.

Louis Bender, New York City, for defendant-appellant.

Before MEDINA, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York convicting appellant on twenty-two counts charging unlawful payment of gratuities in violation of 18 U.S.C. § 201(f) (1964) and on three counts for filing false statements in violation of 18 U.S.C. § 1001 (1964) and 26 U.S.C. § 7206(2) (1964). The court imposed a two-year sentence of imprisonment and a $100 fine for each of the twenty-two gratuity counts; a five-year sentence and a fine of $10,000 on the first of the false-statement counts; and a three-year sentence and a $2000 fine on each of the remaining false-statement counts. The prison sentences are to run concurrently.

We affirm the convictions.

Appellant Egenberg, a certified public accountant, represented a number of European musicians and singers before the Alien Tax Section of the Internal Revenue Service. Among the services he rendered was the preparation of Departing Alien Income Tax Returns (Form 1040C) as well as the ordinary year-end returns (Form 1040B). By stating in connection with Form 1040C that he did not intend to return to the United States before the end of the year, an alien taxpayer could secure an immediate refund of any excess in taxes withheld.

In the returns he filed appellant grossly inflated his clients' deductions for such expenses as outlays for commissions, secretary-interpreters, coaching, publicity, voice training, accompanists, gratuities, copyright fees, as well as the expenses of travel, hotels, and meals when engaged for a specific performance. In order to assure that these returns would not be questioned Egenberg made payments to Vincent Fontana, Solomon Gordon and Raphael Pacello, Alien Tax Section technicians whose duty it was to examine the returns. In 1964 when a new policy required taxpayers to substantiate deductions, appellant began submitting as such substantiation forged or altered documents.

Appellant's unlawful activities were discovered when Vincent Fontana confessed in late 1964 that he had participated in widespread corruption in the Alien Tax Section. Fontana remained in his position by arrangement with the Inspection Service of the Internal Revenue Service and reported in a daily log evidence of graft that came to his attention. This cooperation led to the arrest of the appellant and tax technicians Gordon and Pacello in January 1966.

Fontana testified that during the period from January 1965 to January 1966 he examined at least thirty returns prepared and filed by the appellant and that appellant made ten cash payments to him during the same period. Fontana testified that he accepted deductions which he knew were excessive and which were unsubstantiated and that he did not question appellant's representation that such Metropolitan Opera regulars as Tebaldi, Konya, Nilsson, Tucci, and Stratas did not intend to return to the United States later during the year 1965. Twenty of the thirty returns examined by Fontana showed a net loss.

Gordon testified that Egenberg paid him between $500 and $600 in six or

seven payments during 1965 and that Egenberg had made similar payments every year since 1960. At least twenty returns submitted by Egenberg during 1965 were examined by Gordon.

In exchange for favorable treatment of the returns he had filed, appellant allowed Pacello to use his credit cards. During 1965 at least fifteen returns filed by Egenberg were examined by Pacello. About half of them showed net losses.

The return filed by appellant for Sixten Ehrling, permanent musical director of the Detroit Symphony Orchestra, showed gross income from January 1, to April 15, 1965 of $14,492.08 with expenses totalling $13,081.22. Ehrling testified that his commissions were 20 per cent of gross income, not the 30 per cent reported by appellant, that his publicity expenses were $10.61 not $1,575 and that he had no expenses for a secretary-interpreter or accompanist claimed by appellant to have been $575 and $340. Egenberg indicated in connection with filing Ehrling's Form 1040C that Ehrling did not intend to return to the United States after April 15, 1965, although Ehrling was at that time under obligation to conduct the Detroit Symphony Orchestra at special appearances during the summer and during its regular 1965–1966 season in the fall.

The return filed by appellant for Jonathan Vickers, noted Metropolitan tenor, for the period from February 20 to June 15, 1965, showed gross income of $32,525 from the Metropolitan Opera Company with total expenses of $13,638.75 consisting principally of a commission figured at 30 per cent of gross income and a publicity charge of $2876.60. Vickers testified that he had never seen the return and had not signed it, that his commissions were 10 per cent of his gross income, and that he had no publicity expenses whatsoever during the period.

The government also introduced the testimony of Margot Fonteyn, Joseph Witt, Adriano Petronio, Renata Tebaldi, Dandor Konya, and Raina Kabaiwanska to show that their returns claimed deductions for expenses which they had never incurred.

The appellant testified in his own behalf at the trial, admitting that he had made some payments to Fontana, Gordon and Pacello, but claiming that it was necessary to do so in order to prevent delay and interference in the processing of his clients' returns. He maintained that all information supporting deductions came directly from the taxpayers.

Appellant raises many points as grounds for reversal, but only a few of them merit discussion.

■ Appellant argues that the court erred in submitting the twenty-seven bribery counts to the jury with the alternative gratuity counts on the theory that this joint submission suggested to the jury that the defendant was guilty either of bribery or of paying unlawful gratuities. We do not agree. The evidence was uncontradicted that appellant made repeated payments to the three tax technicians who reviewed his returns. Only the purpose of these payments was at issue. While the jury acquitted the appellant on the bribery counts, the evidence was clearly sufficient to warrant their submission to the jury. Any possibility that the jury might have concluded from the submission of both the bribery and gratuity counts that appellant must have been guilty of one or the other was removed by the trial judge's charge. The charge carefully distinguished between the two offenses and instructed the jury that the "defendant can be acquitted of both or found guilty on one or the other * * *."

■ Appellant next argues that the court erred in allowing the admission of a number of tax returns for a period prior to the period referred to in the indictment. In light of appellant's defense that he made payments to the tax technicians only under duress and that he did not know that the returns contained false information, the fraudulent tax re-

turns were clearly admissible to show motive and criminal intent. United States v. Johnson, 382 F.2d 280, 281 (2d Cir. 1967); United States v. Deaton, 381 F.2d 114, 117–118 (2d Cir. 1967). The fact that appellant had long been filing fraudulent tax returns on behalf of his clients was highly probative of his motive in paying off the agents who were charged with the duty of scrutinizing those returns. We note also that the court in the charge carefully limited the purpose for which the jury was to consider this evidence.

Appellant contends that the trial court unfairly restricted his cross-examination of Fontana, Gordon, and Pacello, the tax technicians, as to their motives for testifying. The record, however, shows that the appellant had an extensive opportunity to cross-examine on these matters. There are ninety pages of cross-examination of Fontana, over one hundred pages for Gordon, and forty-five pages for Pacello. Both Gordon and Pacello were questioned concerning their possible motives to testify falsely in exchange for favorable treatment from the government. Appellant was limited only when he continued to press repetitious questions.

Appellant claims that there was insufficient evidence to sustain a conviction on the charge of falsely stating on Sixten Ehrling's return of April 17, 1965 that Ehrling did not intend to return to the United States. The government proved that appellant had examined Ehrling's file at Columbia Artists Management, Inc., and that this file contained several contracts obligating Ehrling to return to the United States before the end of 1965. The court correctly charged that in order to convict under 18 U.S.C. § 1001 (1964) the jury need only find that the defendant acted "with reckless disregard of whether the statement * * * was true" or that appellant "acted with a conscious purpose to avoid learning the truth." See United States v. Abrams, 427 F.2d 86, 91 (2d Cir. 1970).

Appellant contends that the court's comments concerning 18 U.S.C. § 2 (1964), the aiding-and-abetting section in its charge to the jury on the Section 1001 counts, confused the jury. The record shows that when appellant excepted to the charge, the court recharged on the subject, stating explicitly that the jury could not convict appellant on an aiding-and-abetting theory but only as the principal. The appellant thereupon expressed his complete satisfaction with the charge on this point. At no time during the trial was any evidence presented on an aiding-or-abetting theory, the theory at all times being that none of the taxpayers knew of appellant's fraud. The corrected charge was adequate to withdraw the inapplicable aiding-and-abetting section from the jury's consideration.

Appellant's other claims are without merit and do not require discussion.

Affirmed.