**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert ZELINKA, Defendant–Appellant.**

No. 87–3725.

United States Court of Appeals, Sixth Circuit.

Argued July 26, 1988.

Decided Nov. 25, 1988.

J. Gerald Ingram, argued, Ingram & Ingram, Youngstown, Ohio, for defendant-appellant.

J. Matthew Cain, argued, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before LIVELY, MERRITT and KRUPANSKY, Circuit Judges.

LIVELY, Circuit Judge.

This appeal from a jury conviction for conspiracy to distribute cocaine and unlawful use of communication facilities raises several claims of reversible error in the district court proceedings. The two most serious challenges involve an unauthorized contact with jurors and the admission of evidence that the defendant contends should have been excluded under Federal Rule of Evidence 404(b). Zelinka does not challenge the sufficiency of the evidence, and we will discuss the claimed errors in turn after briefly stating the facts.

## I.

On December 16, 1986, a grand jury in the Northern District of Ohio indicted Zelinka and sixteen other individuals for conspiracy to distribute cocaine. The indictment charged various named conspirators, including Zelinka, with overt acts that occurred between March 19, 1985, and July 3, 1985. Many of these charges involved the use of telephones to facilitate the distribution of drugs. FBI agents arrested Zelinka on December 17, 1986, and found in his possession a half gram of white powder which proved to be cocaine and several clear plastic bags. Zelinka and one other co-conspirator were tried together.

The trial began on April 29, 1987. On May 5 a juror reported to the court after the lunch recess that a spectator who appeared to be associated with Zelinka had made a disturbing comment as he and several other jurors boarded a courthouse elevator. The statement was something to the effect that it would be too bad if the elevator should crash. The trial judge then called the juror into chambers and questioned him, on the record, with all counsel present. The juror repeated his earlier statement and said that after they were on the elevator some of the women jurors expressed fear about the comment and about the fact that some of the spectators appeared to stare at them intently.

The court then conducted extensive individual voir dire of all the jurors to determine whether the incident had affected the ability of any juror to maintain a fair and impartial posture if the trial were permitted to continue. Several jurors expressed some unease because of the overheard comment and stares. One juror related that she had been having nightmares since the trial began. Nevertheless, all stated that they could continue to perform according to their oath, uninfluenced by the elevator incident or other concerns, and render an impartial verdict.

Following examination of the individual jurors defense counsel moved for a mistrial or for removal of three jurors. The court then assembled the jury in the courtroom and asked them as a group whether any of them had "any reason at all ... to believe that you could not finish this case as a fair and impartial juror as you indicated to us when we originally began?" No juror replied that his or her impartiality had been affected. The court then asked if any ju-

ror felt "they are going to have a problem with this," referring specifically to anything that had taken place outside the courtroom. Again, no one responded affirmatively. The court then denied the defense motions, and the trial resumed.

During the trial a government witness testified concerning a co-conspirator's statement to him that indicated Zelinka was involved in a drug transaction a few days after the cut-off date for the conspiracy as described in the indictment. Defense counsel objected on the ground that the testimony involved "criminal conduct which is beyond the time period set forth in the indictment." After hearing argument the court admitted the testimony as part of the "res gestae" of the conspiracy.

In connection with another evidentiary issue, Zelinka made a motion in limine to exclude evidence at trial of his possession of cocaine and plastic bags at the time of his arrest. The trial court deferred ruling until the trial. On the date the arresting agent was scheduled to testify the prosecutor reminded the court of the pending motion, and he and Zelinka's attorney argued the admissibility question. Defense counsel argued that evidence of possession of a half gram of cocaine more than a year after the last date set forth in the indictment was irrelevant, that if the evidence had any relevance the relevance was outweighed by its prejudicial effect, and that the evidence constituted proof of other crimes. The prosecutor responded that the amount and strength (93%) of the cocaine indicated that it was "in distributable form." The court ruled the evidence admissible.

The jury convicted Zelinka on the conspiracy count and one telecommunications count. Zelinka received concurrent six and four year sentences.

## II.

### A.

In arguing that the district court abused its discretion by denying his motion for a mistrial the defendant concentrates on the responses of two jurors. One of the jurors heard the remark at the elevator and stated that she and others around her were shocked and could not believe a person "would say that." The juror testified that she and five or six other jurors discussed the matter at lunch and that they felt uneasy. She stated, however, that she did not believe either side was attempting to influence her and that the incident would neither distract her nor rob her of her impartiality and fairness. The other juror upon whom the defense focuses did not hear the comment at the elevator. However, she heard about it upon returning from lunch, and stated that it made her nervous. She testified about nightmares and a general nervousness at being involved in the trial. Although she attributed both the nightmares and the nervousness to the defense, she stated that she had seen nothing to indicate that anyone was trying to influence her verdict. After being assured by the court that there was nothing wrong with not being able to continue, this juror stated that she felt she could do the job she was sworn to do, uninfluenced by anything that had happened, including her dreams.

### B.

The Supreme Court has outlined the procedure that district courts should follow when advised of unauthorized contacts with a juror. In *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), an unnamed person told a juror in a criminal trial that he could profit by returning a verdict favorable to the defendant. The Court stated that any unauthorized private communication or contact with a juror in a criminal case is presumptively prejudicial and that the government bears the heavy burden of establishing that such communication or contact was harmless to the defendant. *Id.* at 229, 74 S.Ct. at 451. The Court then prescribed the procedure to be followed by a trial court when advised of such a contact:

The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the

impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229–30, 74 S.Ct. at 451.

In *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the district court granted habeas corpus relief to a petitioner who complained that one of the jurors at his state court trial had submitted an application for employment to the district attorney's office during the trial. The trial court conducted a post-trial hearing on the defendant's motion to set aside the verdict. Evidence at the hearing showed that the prosecutors learned of the application while the trial was in progress, but did not advise the court or defense counsel. The district attorney learned of the application after the trial had ended, and advised the court and all counsel. The trial court concluded that the juror's conduct had not unduly prejudiced the defendant. In the habeas proceedings, the district court found insufficient evidence to demonstrate that the juror was actually biased, but imputed bias under the circumstances. The court of appeals affirmed on different grounds. Without considering whether the juror was actually or impliedly biased, it found a due process violation in the failure of the prosecutors to disclose their knowledge of the juror's application.

In reversing, the Supreme Court disagreed with the petitioner's contention that "a court cannot possibly ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question." *Id.* at 215, 102 S.Ct. at 945. The Court discussed its decision in *Remmer* and stated that the trial judge in the case on appeal had accorded "precisely the remedy" ordered in *Remmer.* *Id.* at 216, 102 S.Ct. at 945. One of the Court's statements, however, has created problems for the courts of appeals. Before specifically comparing the state trial judge's actions with the *Remmer* formula, the Court stated, "This Court has long held that the remedy for allegations of juror partiality is a hearing *in which the defendant has the opportunity to prove actual bias." Id.* at 215, 102 S.Ct. at 945 (emphasis added).

■ This court has consistently held that *Smith v. Phillips* reinterpreted *Remmer* to shift the burden of showing bias to the defendant rather than placing a heavy burden on the government to show that an unauthorized contact was harmless. In *United States v. Pennell,* 737 F.2d 521, 532 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), this court interpreted *Smith v. Phillips* as holding that "*Remmer* does not govern the question of the burden of proof where potential jury partiality is alleged. Instead, *Remmer* only controls the question of how the district court should proceed where such allegations are made.... In light of *Phillips,* the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed." (Footnote omitted).

This court has reiterated its interpretation of *Smith v. Phillips* in later cases. *E.g., United States v. Howard,* 752 F.2d 220, 223–24 (6th Cir.), *cert. denied, sub nom. Shelton v. United States,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985); *United States v. Griffith,* 756 F.2d 1244, 1252 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). The First Circuit appears to agree with this interpretation. See *Neron v. Tierney,* 841 F.2d 1197, 1200 (1st Cir.1988); *United States v. DeLutis,* 722 F.2d 902, 909 (1st Cir.1983). On the other hand, at least two courts of appeals have expressly disagreed with *Pennell.* See *United States v. Butler,* 822 F.2d 1191, 1195 n. 2 (D.C.Cir.1987); *United States v. Littlefield,* 752 F.2d 1429, 1431 (9th Cir.1985). Other courts continue to apply *Remmer* as if *Smith v. Phillips* made no change in the burden of proof. Nevertheless, *Pennell* remains the controlling decision in this circuit.

■ The court in *Pennell* also noted the Supreme Court's rejection in *Smith v. Phillips* of the idea that a juror's testimony about her own impartiality is inherently suspect. 737 F.2d at 533. Four points emerge from our decision in *Pennell:* (1) when a defendant alleges that an unautho-

rized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the *"Remmer* hearing" is not inherently suspect.

### C.

■ Applying these standards to the present case we conclude that the district court proceeded properly and did not abuse its discretion in denying Zelinka's motion for a mistrial. The hearing was unhurried and thorough. Defense counsel were permitted to question the jurors and did so at some length. The questioning revealed that most of the jurors paid little attention to the comment at the elevator, and some considered it a facetious remark. Even the two jurors who appeared most disturbed by the elevator incident and the staring spectators did not believe either side was attempting to influence their verdict, and both said they could continue as impartial jurors, unaffected by the events that had disturbed them. The defendant failed to prove actual bias, and the district court properly denied his motion for a mistrial.

### III.

The district court admitted evidence linking the defendant to cocaine transactions that occurred a few days after the conspiracy ended. The court found that the transactions referred to constituted part of the res gestae of the conspiracy. In objecting to admission of this evidence defense counsel reminded the court that it had denied his earlier motion for a bill of particulars, and alleged that he did not have adequate notice "to prepare a defense for criminal conduct after the time period set forth in the indictment." After discussion related to Federal Rule of Evidence 404(b)[1] the district court appeared to accept the government's position that Rule 404(b) did

not control. The court then made its res gestae ruling.

Zelinka makes two alternative arguments on appeal: (1) admission of the evidence of post-indictment acts creates either a "variance" between the indictment and the proof, or an amendment of the indictment; or (2) the evidence was inadmissible proof of other crimes because it did not satisfy the standards of Rule 404(b) and lacked relevance.

■ Every variation between an indictment and proof at trial does not create reversible error. A variation that has the effect of actually or constructively amending the indictment requires reversal, whereas one that adds nothing to the indictment, while a variance, may constitute harmless error. The Supreme Court drew this distinction in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In reversing the conviction, the Court stated, "Ever since *ex parte Bain*, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849] was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16, 80 S.Ct. at 272–73. The Court then made the distinction:

> While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on changes presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.

*Id.* at 217, 80 S.Ct. at 273; see also *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314 (1935) ("The true inquiry ... is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused."). In

---

1. Rule 404(b) provides:

   Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the Court held that there is no amendment, and the variance is not fatal, when the proof establishes a significantly narrower scheme than that charged in the indictment. The Court emphasized that it was the broadening of the charge that led to reversal in *Stirone. Id.* 361 U.S. at 138, 85 S.Ct. at 1816. In reviewing its previous decisions the Court stated, "Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *Id.* at 136, 85 S.Ct. at 1815.

This court has recognized both the distinction between variances and amendments and the reasons underlying their different treatment. *United States v. Beeler,* 587 F.2d 340 (6th Cir.1978), discusses both aspects of the issue:

A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment. Amendments have been held to be prejudicial *per se* while variances may be subject to the harmless error rule. *Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969); *United States v. DeCavalcante,* 440 F.2d 1264 (3d Cir.1971). Variances which create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" constitute constructive amendments. Courts apply the prejudicial *per se* approach to such variances. *United States v. Somers,* 496 F.2d 723, 744 (3d Cir.1974).

The purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial, notice to the court so that it may determine if the alleged facts are sufficient in law to support a conviction, prevention of further prosecution for the same offense and finally, of "paramount importance," the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence. *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.1976).

*Id.* at 342. In *United States v. Hathaway,* 798 F.2d 902 (6th Cir.1986), we examined the issue and relied upon *United States v. Miller* in formulating a test for determining whether a variance is "fatal":

Although the distinction between a variance and a constructive amendment is at best "shadowy," 3 C. Wright, *Federal Practice and Procedure* § 516, at 26 (2d ed. 1982), it has been considered significant. In dicta we have repeatedly stated that "amendments are deemed prejudicial per se." *United States v. Burkhart,* 682 F.2d 589, 591 (6th Cir.), *cert. denied,* 459 U.S. 915, 103 S.Ct. 228, 74 L.Ed.2d 181 (1982); *see also Beeler,* 587 F.2d at 342 (where although prejudice was clearly present, we noted the per se rule). Variances, on the other hand, will not result in reversal unless "substantial rights" of a defendant have been affected. Fed.R.Crim.P. 52; *United States v. Bowers,* 739 F.2d 1050, 1053 (6th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984); *Beeler,* 587 F.2d at 342. Substantial rights in turn, are affected only when a defendant shows "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985).

*Id.* at 910–11 (footnote omitted).

■ Judged by these standards, the evidence of Zelinka's involvement in cocaine transactions a few days after the end of the conspiracy charged in the indictment did not create a fatal variance. This evidence linked Zelinka with a member of the conspiracy as charged, it involved cocaine, and it related to an attempt by some of the conspirators to regroup after the FBI had "raided" the trailer of one of the original conspirators. We have carefully considered *United States v. Davis,* 679 F.2d

845 (11th Cir.1982), *cert. denied sub nom. Armstrong v. United States,* 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983), which is heavily relied upon by the defendant. In *Davis* the court found that the variance was not fatal, the same result this court would have reached on similar facts. We do not believe admission of the evidence prejudiced Zelinka's ability to defend himself, made the trial generally unfair, or created any valid concern about subsequent prosecutions for the same offense.

Having concluded that the variance was not fatal, we need not determine whether the evidence was admissible as part of the res gestae. We note, however, that there is authority for admitting evidence that is closely related in time and similar in nature to the offense charged under a res gestae theory. See *United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982).

## IV.

As we have stated, one of the FBI agents who arrested Zelinka on December 17, 1986, was permitted to testify that he found cocaine and three clear plastic bags containing a white powdery residue on Zelinka's person at the time of his arrest. The agent also testified that he had been present when the co-conspirator's trailer was raided on July 3, 1985, and that some of the plastic bags seized during the raid were similar to those found in Zelinka's possession in December 1986.

## A.

■ The defendant argues that the agent's testimony clearly was evidence of another crime. The fact that he possessed cocaine and plastic bags seventeen months after the conspiracy ended was not relevant to the charges in the indictment. The only purpose of the agent's testimony, the defendant contends, was to show that he was a person of bad character who was likely to have committed the crimes charged in the indictment, a purpose forbidden by Rule 404. The government contends that the evidence was admissible to show motive, intent, plan, knowledge, identity, or absence of mistake. Rule 404(b) permits "other crimes" evidence for these purposes.

The Supreme Court recently dealt with Rule 404(b) in a case involving a somewhat different issue than that now before us. See *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In the course of reaching its decision the Court set forth the basic analysis required in determining the admissibility of evidence under Rule 404(b). The Court stated that the rule "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." 108 S.Ct. at 1499. The Court continued, "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Id.* Finally, the Court quoted the Advisory Committee Notes to Rule 404(b): "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Id.* at 1500. The decision stressed the relevancy requirement.

Decisions of this court issued prior to *Huddleston* have employed the *Huddleston* analysis. See, *e.g., United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985), where we wrote:

When the prosecution claims such evidence is offered for a permissible purpose, the trial court must make two inquiries before admitting the evidence. First, it must determine that the evidence is relevant; that is, the evidence must relate to a matter which is "in issue," and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried. *United States v. Ring,* 513 F.2d 1001, 1005 (6th Cir.1975). Even if the relevancy criteria are met a trial court has discretion to exclude the evidence if "its probative value is substan-

tially outweighed by the danger of unfair prejudice...." Rule 403, Fed.R.Evid.; *United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977); *Ring*, 513 F.2d at 1005; [*U.S. v.*] *Burkley*, 591 F.2d [903] at 920 [D.C.Cir. 1978].

In deciding whether proffered evidence is relevant, the trial court must determine first the purpose for which it is offered. In *United States v. Davis*, 707 F.2d 880, 884 (6th Cir.1983), we held that the trial court must determine whether the evidence is relevant to the particular issue claimed, and whether it satisfies the relevancy requirement of Federal Rule of Evidence 403.[2] Here, however, the government has failed to articulate any theory of admissibility. It has merely stated that the amount of cocaine and its purity indicated that it was "in distributable form." On appeal the government contends that the evidence was offered to show motive, intent, plan, knowledge, identity, and absence of mistake. This statement merely parrots the language of Rule 404(b), and provides no explanation of how this particular evidence relates to any matter in issue. If the government had shown that the evidence showed motive, by proving that Zelinka was a distributor and not a mere user, and if that motive had been in issue, the government could have brought the evidence explicitly within the Federal Rule of Evidence 404(b) exception and permitted a ruling in its favor by the trial court. We have searched the record to determine whether, in fact, such an argument was possible, and it does not appear to be so. Zelinka did not testify. He merely pled not guilty and put the government to its proof. The issue Zelinka posed was not whether he was a user or distributor, but whether he was a member of the conspiracy. Under these circumstances, the government may not look to a court of appeals to infer an argument for admissibility where none was made. We are forced to conclude that the evidence does not fall within any excep-

tion to the Federal Rule of Evidence 404(b) prohibition of evidence of other crimes or wrongs and was therefore not admissible.

### B.

The district court abused its discretion by admitting the evidence in question without requiring the prosecutor to show its relevance and the necessity for its admission. See *United States v. DeVaughn*, 601 F.2d 42, 45 (2d Cir.1979). Even if the evidence indicated that Zelinka possessed cocaine for the purpose of distribution in December 1986, it was not admissible to prove that he had participated in a conspiracy to distribute cocaine that ended in July 1985. The evidence related to a time that was remote from the period of the conspiracy and involved none of the other conspirators. *Blankenship*, 775 F.2d at 739. This evidence failed the "threshold inquiry"—it was not "probative of a material issue other than character." *Huddleston*, 108 S.Ct. at 1499. On the other hand, it strongly suggested that, as one handling an illegal drug at the time of his arrest, Zelinka had probably acted in conformity with the character of a drug dealer seventeen months earlier. This is precisely the use for which such evidence may not be admitted under Rule 404(b). Although the second sentence of Rule 404(b) is one of inclusion rather than exclusion, this court has insisted that the use of other crimes evidence be confined to the purposes listed in the rule. In addition, the two-step analysis prescribed by the Supreme Court and this court must be followed.

The district court did not reach the second "balancing step" of determining whether the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice." Federal Rule of Evidence 403. Since we can find no basis for holding that the evidence was relevant to any matter in issue among those listed in Rule 404(b), we need not discuss the Rule 403 requirements.

---

2. Rule 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The judgment of the district court is reversed, and the case is remanded for a new trial.