**UNITED STATES of America, Plaintiff,**

v.

**Ladd ANTHONY, Defendant.**

**No. CR88–271.**

United States District Court,
N.D. Ohio.

March 1, 1989.

Daniel R. Schiess and Jackie Bennett, U.S. Dept. of Justice, Crim. Div., Public Integrity Section, Washington, D.C., for plaintiff.

Elmer Guiliani, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

This is a criminal case involving two alleged violations of 18 U.S.C. § 201(c)(1)(B) which prohibits the receipt of illegal gratuities by public officials. The Defendant, Ladd Anthony, was Special Assistant to U.S. Senator Howard M. Metzenbaum at all times relevant to the two Counts. According to the indictment, the Defendant's position as a Special Assistant included duties as a case worker. In that capacity, he assisted the Senator's constituents when they contacted his office. Because the Defendant spoke the Polish language, he apparently handled cases which primarily involved Polish speaking individuals. The Defendant is charged with two violations of the above section. In particular, he is accused of receiving $1,000 from Waclaw Pietrzykowski to assist a woman in her application to the Ohio State University, College of Veterinary Medicine (OSU), and of receiving $300 from Irena Boc to assist her with an application for naturalization. The trial of this case is set for Wednesday, March 1, 1989.

On February 3, 1989 the Government filed a Motion *in limine* to admit evidence of prior uncharged crimes pursuant to Fed. R.Evid. 404(b). The statute of limitations precluded the grand jury from considering up to nine other instances in which Defendant received gratuities, according to the Government. It is the evidence regarding these other prior crimes that the Government wishes to introduce under Fed.R. Evid. 404(b). That rule states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"In reviewing the admission of evidence challenged under Rule 404(b), we must make two determinations. First, we must decide whether [the prior crime is] admissible for any *proper* purpose, as distinct from the *improper* purpose of showing 'character' or 'propensity.'" *United States v. Vincent*, 681 F.2d 462, 464 (6th Cir.1982). This requires the trial court to "determine whether the evidence is relevant to the particular issue claimed...." *United States v. Zelinka*, 862 F.2d 92, 99 (6th Cir.1988). "Only by tracing the line of relevance through to one of the ultimate issues in the case can the court insure...." the proper use of the 404(b) exceptions. Wright & Graham, *Federal Practice and Procedure, Federal Rules of Evidence* § 5239 (1978). If a proper purpose exists, then the court must decide "whether it satisfies the relevancy requirement of Federal Rule of Evidence 403." *Zelinka*, 862 F.2d at 99.[1] That is to say, the risk of unfair prejudice to the Defendant must be substantially outweighed by the probative value of the included evidence.

*Count I*

■ This Count involves the alleged receipt of a gratuity offered by Mr. Waclaw Pietrzykowski. According to the Government, it intends to prove that Pietrzykowski asked the Defendant to help his friend obtain admission to OSU. Allegedly, Anthony told Pietrzykowski that it would cost a total of $2000, one half to be paid up front. $1,000 was paid, but Pietrzykowski's friend was never admitted to OSU.

---

1. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Pietrzykowski then asked the Defendant to return the money, but he refused. In November of 1986, however, the Defendant allegedly returned $500 to Pietrzykowski, in person.

The Government wishes to present the evidence of prior crimes to show the Defendant's motive for returning the $500 to Pietrzykowski. Motive, of course, is one of the exceptions to Fed.R.Evid. 404(b). However, "motive is not an ultimate issue, therefore, proof of motive must always be directed at some other fact that is an ultimate issue in the case." Wright & Graham, *Federal Practice and Procedure, Federal Rules of Evidence* § 5240 (1978). The Government asserts that "Anthony's motive for returning the money lies in the fact that at the time Anthony returned the money, he knew that he was under investigation for receiving money from other immigrants. Presumably Anthony believed that if he returned the money, Pietrzykowski would not disclose that he paid money to Anthony." Thus the Government wants to use evidence of prior crimes to show *why* the Defendant returned the money. However, the act of returning the money is not even an element of the crime charged. It is not an ultimate issue. That the Defendant "returned" $500 to Pietrzykowski leads only circumstantially to an inference that some money was paid in the first place. The motive behind returning the money, thus, can hardly be relevant to any ultimate issue, especially when proven through evidence so highly prejudicial as prior uncharged crimes. If the Government can prove that money was received by the Defendant, it should do so as directly as possible. But, to attempt to prove that fact by revealing past crimes, which might show a motive for returning money, which might lead to the inference that money was previously received (the ultimate issue) seems an unnecessarily tortuous and dangerous route.[2]

Accordingly, no evidence of past crimes shall be permitted to show the Defendant's motive for allegedly returning $500 to Pietrzykowski.

*Count II*

■ In Count II the Government alleges that the Defendant received $300 from one Irena Boc to assist her with her application for naturalization. According to the Government, the circumstances of the relationship between Boc and the Defendant involved other persons and evidence of other crimes. Boc, apparently, was personally introduced to the Defendant through one Albert Markiewicz. Markiewicz, in turn, had been previously introduced to the Defendant by another person, John Krusinski. Allegedly, Krusinski had introduced a number of Polish immigrants to the Defendant. Markiewicz being only one of them. Illegal gratuities were supposedly exchanged in those instances.

The Government urges the introduction of the details pertaining to the above evidence to inform the jury of the background and "setting of the case."[3] Such a purpose, the Government argues, is proper under Fed.R.Evid. 404(b). The Sixth Circuit held, in *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977), that "[t]he jury is entitled to know the "setting" of a case.

---

**2.** The ordinary and proper use of prior crimes evidence to prove motive is to show the motive for committing the crime charged. For instance, in *U.S. v. Egenberg*, 441 F.2d 441 (2nd Cir.1971), evidence of the defendant's prior crime of filing fraudulent tax returns was introduced to show his motive for paying illegal gratuities to tax return examiners. As the court described it, "[t]he fact that appellant had long been doing fraudulent tax returns on behalf of his clients was highly probative of his motive in paying off the agents who were charged with the duty of scrutinizing those returns." *Id.* at 444.

**3.** The details regarding Markiewicz, according to the government, are as follows: In 1981, Markiewicz paid $2,300 to Krusinski for the Defendant's assistance in obtaining green cards for him and his girlfriend, Barbara Christie. In mid–1982, Markiewicz called the Defendant. The Defendant told Markiewicz that he would be having dinner with an official from INS. Markiewicz thereafter gave the Defendant an additional $150, which Defendant said was insufficient. Markiewicz then gave $500 more to the Defendant.

The government further contends that the reason Markiewicz offered to help Boc was because he thought it "might help him with his still-pending green card application...."

It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." In *Roberts*, the district court permitted the use of evidence which indicated that the Defendants, charged with bank robbery, were inmates at a federal prison and were taking part in a work release program when they allegedly committed the crime.

Leading commentators have also espoused the view that relevant background circumstances are admissible under Rule 404(b). They state that:

Rule 404(b) presupposes the existence of *other* crimes, wrongs or acts. Sometimes, however, it is very difficult to draw a line between the crime charged and other wrongful circumstances with which it is inextricably intertwined. It may be quite impossible to prove the case without revealing other crimes. The court cannot "fragmentize the event under inquiry." If an understanding of the event in question, or if a description of the immediate circumstances reveals other crimes than those charged, exclusion will lead to a highly artificial situation at the trial making understandable testimony unlikely.

Weinstein & Berger, *Weinstein's Evidence* ¶ 404[10]

The complete exclusion of evidence pertaining to Markiewicz would seem to cause an artificial situation, a fragmented presentation. It was through Markiewicz that Boc contacted the Defendant. To exclude all references to Markiewicz would leave an unnatural gap in the chain of events which comprised the alleged crime. On the other hand, however, to permit the inclusion of the details surrounding Markiewicz's relationship with the Defendant are of limited relevance to the supposed dealings between Boc and the Defendant.[4] Evidence regarding the formation of the relationship among Boc, Markiewicz, and the Defendant, however, would seem to be of some importance in providing the jury with the "setting of the case." Therefore, evidence may be admitted, for example, as to why Boc went to Markiewicz for assistance, what Markiewicz knew about the Defendant, and what efforts Markiewicz took on behalf of Boc.

Such evidence must be confined to the general background of the relationship, however. No mention of prior illegal activities between Markiewicz and Krusinski or the Defendant shall be permitted. The details of Markiewicz's supposed dealings with the Defendant are highly prejudicial, and hardly probative of Boc's alleged activities. Thus, the Court will be extremely guarded against any attempt to go beyond the mere generalities which underlie the relationship among Boc, Markiewicz and the Defendant.[5]

Furthermore, the timeliness of Markiewicz's prior uncharged crimes is questionable. Because the statute of limitations has run, those actions may no longer be used to establish Markiewicz's criminal liability. Yet, the Government seeks to use them to support subsequent criminal liability. Many of the policy considerations underlying the statutes of limitations are equally pertinent in the context of the admissibility of prior uncharged crimes: memory lapse, the staleness of ageing evidence, the lack of witnesses, the possibility of laches, and the concept of finality. Such policy considerations weigh against the admissibility of prior crimes and bolster the determination made above regarding Markiewicz's prior illegal activities.

The Government also urges the introduction of evidence regarding the prior involvement between Krusinski and the Defendant. The only role that Krusinski played in the acts which comprise Count II

---

4. *See Supra,* footnote 3.

5. The government further asserts that evidence regarding Markiewicz's girlfriend, Barbara Christie, should be admitted. Allegedly, Markiewicz paid money to Krusinski on behalf of himself and Christie. But nowhere does the government claim that Christie took part in the activities comprising Count II, i.e., the supposed payment of $300 by Irena Boc to the Defendant. The Court can discern no relevant reason to admit. Such highly prejudicial and cumulative evidence is unnecessary, and, in the interest of a fair trial should not be admitted.

is that he introduced Markiewicz to the Defendant. Boc is not alleged to have any relationship to Krusinski, however. Any prior dealing which Krusinski had with the Defendant are, therefore, merely of tertiary relevance to any activities carried on between Boc and the Defendant. Whatever probative value can be attached to Krusinski's prior activities with the Defendant is heavily outweighed by the prejudicial impact of any uncharged prior crimes.

Finally, the Government argues that evidence should be admitted regarding the alleged activities between one Henryka Pasterkiewicz and the Defendant. In support of their assertion, the Government states that "when Markiewicz asked Anthony if he would be willing to help Boc, Markiewicz simultaneously asked Anthony if he would help Pasterkiewicz.... Thus, given the fact that Anthony talked about Boc and Pasterkiewicz together, evidence of Anthony's involvement with Boc is inseparably connected with Anthony's criminal involvement with Pasterkiewicz." This argument is unpersuasive. It may be true that the conversation involved two persons, Boc and Pasterkiewicz. However, the crime charged involved only Boc. There is no relevance in the fact that two names were mentioned in the same breath. Surely, the exclusion of Pasterkiewicz's activities will not result in a fragmentized, artificial situation making understandable testimony unlikely.[6] All evidence pertaining to Pasterkiewicz will thus be inadmissible.

*Intent*

■ The Government makes the sweeping assertion that all of the prior crimes should be admitted into evidence under the intent exception to Rule 404(b). It states that "[i]n a prosecution for gratuity, the Government must establish the Defendant's intent to act 'otherwise than as provided by law for the proper discharge of official duty' by demanding and accepting a thing of value 'for or because of any official act performed or to be performed.'"[7]

It must first be noted that "[s]pecific intent is not an element of ..." 18 U.S.C. § 201(c)(1)(B). *United States v. Evans*, 572 F.2d at 481. "Under the unlawful gratuity subsection all that need be proven is that the official accepted, because of his position, a thing of value 'otherwise than as provided by law for the proper discharge of official duty ...' Thus, section [201(c)(1)(B)] makes it criminal for a public official to accept a thing of value to which he is not lawfully entitled, regardless of the intent of the donor or donee." *Id.* at 480. "The gravamen of each offense, then, is not an intent to be corrupted or influenced, but simply the acceptance of an unauthorized compensation." *Id.* at 481. There is only a "simple mens rea required for [the] violation of the gratuity sections." *United States v. Strand*, 574 F.2d 993, 995 (9th Cir.1978), that the Defendant had the general intent to commit the act.[8]

In this case, the Defendant must be proven to have simply intended to demand, seek, receive or accept a gratuity not otherwise payable to him for the performance of his official duties, and to have intended to perform the official acts charged.[9] Thus, the Government need only prove that the Defendant intended the consequences of

---

6. *See Supra,* Weinstein & Berger at ¶ 404[10].

7. To imply that the government must prove that the Defendant intended to act "otherwise than as provided by law" is a mistaken reading of 18 U.S.C. § 201. That section reads, in pertinent part, "whoever ... being a public official ... otherwise than as provided by law for the proper discharge of official duty ... accepts ... anything of value ..." Thus, the prohibited act is the acceptance of anything of value which is not authorized in law as compensation for the public official. *United States v. Evans*, 572 F.2d 455, 480 (5th Cir.1978). The phrase "otherwise than as provided by law for the proper discharge of official duty" refers to the nature of

the alleged gratuity, not to the mental state, or intent, of the Defendant.

8. "By 'general intent' we mean intent in the sense that a person intends the consequences of his voluntary physical actions." *Holloway v. McElroy*, 632 F.2d 605 (5th Cir.1980).

9. A "*quid pro quo* ... need not exist if only an illegal gratuity is involved ... the official act for which the gratuity is given might have been done without the gratuity, although the gratuity was produced because of the official act." *United States v. Brewster*, 506 F.2d 62, 73 (1974). *See also, United States v. Strand*, 574 F.2d 993 at n. 2 (1978).

the culpable acts: that unauthorized money was accepted, that Defendant performed an official act to aid Pietrzykowski's friend in being accepted to OSU (Count I), and that Defendant took Boc to the INS office to apply for citizenship (Count II).

The probative value of prior uncharged crimes to prove intent seems most relevant when the crime charged requires proof of specific intent. In such a situation, the prior crimes lead to the inference that a Defendant possessed the required mental state. However, where only general intent must be proven, the introduction of evidence regarding prior uncharged crimes is of much less value, for only a simple mens rea is required. Essentially, the Government needs only to prove that the culpable acts were not unintentional. Thus, the evidence of prior crimes will serve mostly to demonstrate that the Defendant had the propensity to commit the crime charged, the one impermissible use of such evidence.

Furthermore, the issue of Defendant's general intent might not even be challenged at trial. Prior crimes should only be admitted to prove intent "when it is obvious that the defense will raise lack of intent as a defense.... The requirement that the issue be in dispute can be considered in deciding whether there is any need for the other crimes evidence, a factor relevant in assessing its probative value." Wright & Graham, *Federal Practice and Procedure, Federal Rules of Evidence,* § 5242.

In this case, the level of intent required is minimal, and it is not even certain whether it will be raised as a defense. Therefore, the introduction into evidence of prior uncharged crimes, in this setting, would not seem to be of significant value in proving that the Defendant intended the consequences of his voluntary acts (general intent), especially when weighed against the obvious prejudicial effect. Accordingly, no evidence of prior uncharged crimes shall be admitted into evidence to prove general intent.

In sum, then, the only admissible evidence of prior uncharged crimes shall be that background evidence necessary to set out the relationship among Boc, Markiewicz and the Defendant. Evidence of Markiewicz's alleged dealings with Krusinski and the Defendant will be inadmissible.

IT IS SO ORDERED.