82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nemesio CAMARGO, Defendant-Appellant.
 No. 95-3124.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1996.
 
 Before: KEITH, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a drug case in which the defendant appeals both his conviction and his sentence. As to the conviction, the defendant contends that the trial court erred by (1) denying a motion to dismiss the case for failure to prove the conspiracy alleged in the indictment; (2) admitting irrelevant evidence; (3) admitting hearsay statements of co-conspirators; (4) failing to instruct the jury as to the possibility of multiple conspiracies; (5) failing to instruct the jury that it could not convict based upon a conspiracy between the defendant and a government informant; and (6) not excluding evidence which the government failed to turn over to the defense promptly. As to the sentence, the defendant argues that the court improperly enhanced his sentence for a leadership role and attributed an excessive quantity of drugs to him. Finding no reversible error, we shall affirm the conviction and the sentence.
 
 
 2
 * The indictment alleged a conspiracy among the defendant (Nemesio Camargo), Maen Youssef, Robert Natal, Ralph Delatorre, Fernando Aguilar, and various unnamed individuals. The object of the conspiracy was said to have been the distribution of cocaine in the Cleveland area from about November of 1990 to March of 1993.
 
 
 3
 Youssef, Natal, Delatorre and Aguilar entered guilty pleas; only the case against Mr. Camargo went to trial. The conspiracy proved at trial can be divided into three levels. At the top level were the suppliers--Ralph Delatorre and a group centered around Jorge Lopez--who brought cocaine into Cleveland from the East Coast. At the next layer of the conspiracy were Mr. Camargo and Mr. Youssef, who received the cocaine from the suppliers and distributed it to various dealers in Cleveland. (Robert Natal was a courier who worked first for Mr. Camargo and then Mr. Youssef, delivering cocaine and picking up money.) At the bottom level were small dealers. These included George Krocker, Joseph Romano, Lee Jones, and Clarence Bryant.
 
 
 4
 An incident that occurred in the summer or fall of 1990 helps illuminate the structure of the conspiracy. Messers. Lopez, Jones, Bryant, Youssef, Delatorre, and Camargo all met at a garage owned by Mr. Youssef. From the trial testimony concerning this meeting, a multi-level relationship becomes clear: Mr. Delatorre supplied the drugs to "his customer," Mr. Camargo; Mr. Youssef produced customers for the drugs--Messers. Jones and Bryant; and Messers. Youssef and Camargo sold the drugs to Jones and Bryant.
 
 
 5
 Initially, it appears, Mr. Delatorre, working with the Lopez ring, supplied cocaine to Mr. Camargo. (Camargo drove to Philadelphia to pick up a shipment of cocaine from Delatorre at the Lopez house, and Lopez and Delatorre later brought the drugs to Camargo in Cleveland for sale at Youssef's garage.) Sometime in late 1991, however, Mr. Delatorre had something of a falling out with the Lopez group. He then moved to Cleveland, where he continued to supply Mr. Camargo with cocaine received from Mr. Lopez.
 
 
 6
 Early in the conspiracy, at least, Mr. Camargo would supply cocaine to Mr. Youssef, who in turn would supply smaller dealers. At some point, however, the Lopez ring began to distribute directly to Mr. Youssef.
 
 
 7
 Jones and Bryant testified that after the initial transaction at Youssef's garage they continued to buy cocaine from Youssef and Camargo. At some point in 1991, according to Mr. Bryant's testimony, Mr. Camargo "fell out of the picture" and they dealt only with Mr. Youssef. Two other dealers, Krocker and Romano, testified that they were supplied cocaine directly by Mr. Camargo.
 
 II
 
 8
 Defendant Camargo argues that the evidence introduced at trial was insufficient to establish that he was part of the same conspiracy as Mr. Youssef. But the evidence shows that Camargo and Youssef together sold cocaine to Bryant and Jones for a period of time, and that Youssef indicated to Jones that Camargo was one of his suppliers. On these facts, and "viewing the evidence in the light most favorable to the prosecution," as we must, "we are convinced that a rational trier of fact could have found the essential elements of the [alleged conspiracy] beyond a reasonable doubt." See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 9
 It is true that there is no indication in the evidence that Mr. Delatorre supplied Mr. Camargo with cocaine after 1992--and the 1992 evidence is minimal. But the fact that Mr. Camargo may, at some point, have dropped out of the alleged conspiracy does not create a material variance with the indictment. And even if a material variance could be said to exist, Mr. Camargo has not shown that it affected his "substantial rights." See United States v. Zelinka, 862 F.2d 92, 97 (6th Cir.1988).
 
 
 10
 It would have been preferable for the trial court to have instructed the jury explicitly on a theory of multiple conspiracies--i.e., to have told the jury that the prosecution had to prove that the defendant participated in the conspiracy charged in the indictment, and that proof of some other conspiracy would not suffice. Defendant Camargo did not raise this point with the trial court, however, and he cannot prevail on the issue now absent a showing of plain error. United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990). We see no such error here. The trial court did instruct the jury that "the defendant is only on trial for the particular crime charged in the indictment," thereby making it sufficiently clear that to find the defendant guilty, the jury would have to find him a participant in the conspiracy alleged in the indictment. See United States v. Davenport, 808 F.2d 1212, 1218 (6th Cir.1987).
 
 
 11
 The defendant also argues that the trial court improperly admitted evidence not relevant to the case against him individually. It is true that the government introduced evidence concerning shipments of cocaine by the Lopez crime ring that were not shown to be directly connected to the defendant. And it is also true that evidence was introduced concerning the seizure at the airport of a cocaine shipment that the prosecution did not connect to the conspiracy alleged in the indictment. If any error was committed in this regard, however, it was harmless. Errors not of constitutional significance are harmless "unless it is more probable than not that the error materially affected the verdict." United States v. Phillip, 948 F.2d 241, 251 (6th Cir.1991), cert. denied, 504 U.S. 930 (1992). In light of all the other evidence that Mr. Camargo conspired to buy and sell cocaine, we are satisfied that the admission of questionable testimony did not materially affect the verdict.
 
 
 12
 The defendant challenges the admission of hearsay statements--testimony by Hurtado as to statements by Natal, and testimony by Jones as to statements by Youssef--linking the cocaine seized at the airport to the defendant. Under Rule 801(d)(2)(E), Fed.R.Evid., statements made by a co-conspirator are not hearsay when made in the course of and in furtherance of the conspiracy. It is not readily apparent to us that these statements were made for the purpose of keeping the co-conspirators informed of the supply of cocaine, or were otherwise in furtherance of the conspiracy, but for the reasons already indicated, any error in this regard was harmless.
 
 
 13
 At trial the government introduced a tape made by Mr. Krocker (who had agreed to become a government informant) in which he discussed past and future cocaine deals with the defendant. The defendant argues that the district court erred in refusing to instruct the jury that a conviction for conspiracy could not rest upon evidence that the defendant had agreed to sell cocaine to a government informant. The trial court--acting within its discretion, we think--rejected the requested instruction on the basis that it would "give[ ] much more enhancement to the testimony of the tape [than] the testimony warrants." And in light of the other evidence, any error was harmless in any event.
 
 
 14
 The defendant also challenges the government's failure to produce this tape before trial. The record indicates that the government was not able to obtain the tape from the Cleveland Police Department until after the trial began; that the defendant's counsel had notice of the existence of the tape at least three days before the trial; and that the court granted a continuance to allow the defense counsel to review the tape. Under these circumstances, we do not think the district court abused its discretion in admitting the tape.
 
 III
 
 15
 In reviewing a district court's application of the sentencing guidelines, we are constrained to "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). In light of this constraint, we accept the trial court's finding that 50 to 150 kilograms were attributable to the defendant for sentencing purposes. Mr. Delatorre testified that he personally had sold over 80 or 90 kilograms of cocaine to Mr. Camargo, and Mr. Bryant indicated that he had received about 50 kilograms from Mr. Camargo.
 
 
 16
 We find no error in the trial court's decision to enhance Mr. Camargo's offense level under U.S.S.G. § 3B1.1(c) because of his role as "an organizer, leader, manager or supervisor in any criminal activity." Mr. Camargo arranged for the delivery of cocaine through Mr. Delatorre and for its resale through various dealers, and he employed Mr. Natal to assist him in this enterprise.
 
 
 17
 AFFIRMED.