JENKINS, Admr., et al., Appellants,

v.

BAZZOLI et al., Appellees.

[Cite as *Jenkins v. Bazzoli* (1994), 99 Ohio App.3d 421.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE03–294.

Decided Dec. 30, 1994.

422

*Piacentino & Piacentino Co., L.P.A.,* and *C. Michael Piacentino; Eason, Lawson, Fishburn & Dalton, C. Michael Lawson* and *Joseph Dalton,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur* and *Gayle E. Arnold,* for appellees James M. Bazzoli, M.D., and Frederick C. Smith Clinic, Inc.

*Jacobson, Maynard, Tuschman & Kalur, Jerome Kalur, Kevin J. Brennan* and *Karen L. Clouse,* for appellees Larry Mellic, M.D., and Samuel J. Kiehl, M.D., d.b.a. Olentangy Emergency Physicians.

*Lee Fisher*, Attorney General, and *Robert J. Byrne*, Assistant Attorney General, for Ohio Department of Human Services.[1]

WHITESIDE, Presiding Judge.

Plaintiffs-appellants, Roger D. and Connita F. Jenkins, appeal from a judgment of the Franklin County Court of Common Pleas and raise the following six assignments of error:

"1. The trial court committed error prejudicial to the plaintiffs-appellants by denying the plaintiffs' motion to strike or remove Juror Ward based upon his false, incomplete, and misleading voir dire responses.

"2. The trial court committed error prejudicial to the plaintiffs-appellants by refusing to grant a new trial based upon the false, incomplete, and misleading voir dire responses of Juror Number Two and in view of the misconduct of defense counsel in failing to disclose his recent representation of the juror's father in medical malpractice litigation.

"3. The trial court committed error prejudicial to the plaintiffs-appellants in denying [the] Jenkins[es]' motion for new trial where the record raised doubt about the impartiality of Juror Ward, and where the trial court ruled before receiving [the] Jenkins[es]' supplementary filings.

"4. The trial court committed error prejudicial to the plaintiffs-appellants in interrupting counsel for plaintiffs' closing argument and restricting said argument so that a full discussion of the issues in the case was not possible.

"5. The trial court committed error prejudicial to the plaintiffs-appellants by unduly emphasizing the issue of proximate cause in its instructions.

"6. The trial court committed error prejudicial to the plaintiffs-appellants by excluding testimony of statements made by Teresa Jenkins, the decedent, concerning instructions she received from her physician, James M. Bazzoli, M.D., defendant-appellee, relative to the nature of her treatment rendered by defendant-appellee, James M. Bazzoli, M.D. at the March 21, 1990 visit."

Plaintiffs filed the complaint as co-administrators of the estate of their daughter, Teresa L. Jenkins, and as co-custodians and next friend of their granddaughter, Autumn Jenkins, against defendants, James M. Bazzoli, M.D., Frederick C. Smith Clinic, Inc., Larry Mellick, M.D., and Samuel J. Kiehl, M.D., Inc., d.b.a. Olentangy Emergency Physicians, Inc., alleging injuries and the wrongful death of their daughter and injuries to their granddaughter. A suggestion of death was

---

1. Although listed on the briefs of the parties, there is no indication that the state of Ohio (Department of Human Services), is a party affected by this appeal.

filed upon the death of Autumn Jenkins, who died on April 3, 1993. An order was entered allowing the administrator of the estate of Autumn Jenkins to be substituted for the Jenkinses and to allow the administrator to amend the complaint to include a wrongful death and survivorship claim.

The trial began on November 8, 1993, and six of the eight jurors found in favor of defendants. Plaintiffs filed a motion for new trial, which the trial court overruled. Plaintiffs filed a motion for reconsideration of the motion for new trial and a notice of appeal on the same day. The motion for reconsideration was denied.[2]

The case involved a claim for medical malpractice. The plaintiffs brought a claim contending that the doctors failed to diagnose and treat Teresa Jenkins for a urinary tract infection of the bladder. The infection progressed into pyelonephritis, a type of urinary tract infection involving the kidneys. She suffered adult respiratory distress syndrome, which caused her to experience premature labor. Then Teresa developed necrotizing pneumonia, which ultimately led to her death on May 3, 1990. Her daughter was born prematurely and died on April 3, 1993, as a result of complications from her premature condition.

■ By the first assignment of error, plaintiffs contend that the trial court erred by denying the plaintiffs' motion to strike or to remove Juror Two based upon his false, incomplete, and misleading voir dire responses. The problem in this case is that Juror Two, who became the foreman of the jury, failed to disclose during voir dire that his wife is a nurse and his father is a physician/surgeon. At the beginning of the second day of trial, the juror disclosed the information to the trial court. The trial court informed counsel as follows:

"I have told him that I appreciated his telling me that and that I would tell you all that, and that it might be that we would need to either, that one side or the other might want to ask him further questions about that. I don't propose we do this right now for a couple of reasons. One is we got some other things to do, and two is you all may want to think about it between now and around 10:00.

---

2. Plaintiffs filed a motion to correct the record on appeal to include (1) an affidavit which was attached to their motion for reconsideration, and (2) the decision from the trial court denying the motion for reconsideration. Defendant Mellick filed a motion to strike because the documents were not a part of the record, since plaintiffs filed the motion for reconsideration on the same day as the notice of appeal. Defendant argued that filing the notice of appeal divested the trial court of jurisdiction. (Defendant Bazzoli also filed a motion to strike.) Pursuant to the first paragraph of the syllabus of *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, "[t]he Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." Therefore, plaintiffs' motion is overruled, and defendants' motions are sustained, but have no bearing on the outcome of this case.

And at 10:00 we are going to have a recess until about 10:30, but I want you to understand that that happened this morning.

" * * *

" * * * We got a couple of alternates and we can deal with that a little later. * * * "

Additionally, after trial, plaintiffs' counsel discovered that defense counsel had been counsel of record for the juror's father in a medical malpractice case that had settled earlier that year.

Defendants argue that there is no misconduct involved on the part of the juror because he honestly answered the questions he was asked. Defendants argue that he was not specifically asked any question that would lead to this knowledge. While being true that the juror was not directly specifically asked if his father was involved in the medical profession, the questions that were asked suggested such an answer. The trial court asked the following:

"[A]ny of you prospective jurors know any of the parties or any of the lawyers who represent any of the parties?

"The next question is *whether any of you or your* close friends or *families were ever parties to or witnesses in or had experience in a case of this nature?* I'm not talking about if you heard of, because it's pretty difficult not to hear about these cases in our society, but if any of you have any personal experience, we need to know about that. * * * " (Emphasis added.)

Later, plaintiffs' counsel asked:

"Thank you. I think the court has already asked you if any of you have relatives—well, family in the medical profession. Do any of you have very close friends in the medical profession[?] * * * "

Even if not directly asked whether any family was involved in the medical profession, it was clear from the questions that were asked that the information was sought. The question from the court quoted above should have elicited the information about Juror Two's father being a physician and his medical malpractice case, since he is a member of the juror's family who was involved "in a case of this nature."

Even if the trial court found no misconduct on the part of the juror, the court had a duty to question the juror further when it came to the court's attention that the juror had not disclosed such important information. Contrary to the contention that plaintiffs' counsel did not raise the issue, the record reflects the following:

"THE COURT: * * * Anything further other than instructions, please? Hearing nothing from anybody, let's get—

"MR. PIANCENTINO: We do have one question about Juror Ward.

"THE COURT: Juror Ward, Number 2?

"MR. PIACENTINO: Number 2. You came to us about the second or third day of trial—

"THE COURT: He forgot to tell us that—

"MR. PIACENTINO: *You said we would get to that after the close of proof.* We need to address that." (Emphasis added.)

Even if the court did not conduct the questioning at that time, it should have been done at the close of evidence when plaintiffs' counsel specifically requested that the court strike the juror. Before denying such request, the court should have conducted further inquiry of the juror to discover whether he was biased or would be affected by his father's occupation and litigation experience. Pursuant to *Petro v. Donner* (1940), 137 Ohio St. 168, 175, 17 O.O. 513, 516, 28 N.E.2d 503, 506, to make a voir dire examination effective, "it is essential that the prospective juror examined should search his memory and give frank and truthful answers to the questions propounded." That court found in paragraph two of the syllabus:

"Where, on *voir dire* examination, the undisclosed or undenied facts are such as are indicative of a mind which it is reasonable to believe is biased or prejudiced, or such as would disqualify the prospective juror in the first instance, the granting of a new trial under such circumstances is not an abuse of discretion."

Additionally, pursuant to R.C. 2313.43, the trial court should have determined the validity of plaintiffs' challenge to the foreman's suitability. R.C. 2313.43 provides in pertinent part as follows:

"In addition to the causes listed under section 2313.42 of the Revised Code, any petit juror may be challenged on suspicion of prejudice against or partiality for either party * * * or other cause that may render him at the time an unsuitable juror. The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased."

It is doubtful that the juror was completely unbiased, and no inquiry was conducted to determine his suitability. The trial court should either have removed him as a juror or at least conducted an inquiry into his suitability. As an alternative, the trial court could have allowed plaintiffs an opportunity to use a peremptory challenge and seat an alternate juror, since plaintiffs passed on all three peremptory challenges without benefit of the background information which the juror failed to reveal until later. See Civ.R. 6(B) and 47(B). Additionally, at

the time that the juror revealed to the court the important information, the jurors had not been advised as to which of them were regular jurors and which were the alternates. As such, plaintiffs' first assignment of error is well taken.

By the second assignment of error, plaintiffs contend that the trial court erred by refusing to grant a new trial based upon the false, incomplete, and misleading voir dire responses of Juror Two and in view of the alleged misconduct of defense counsel in failing to disclose his recent representation of the juror's father in medical malpractice litigation. The first part of this assignment of error is basically the same contention as the first assignment of error and was addressed above. However, the second part of the assignment of error alleges misconduct on the part of defense counsel for failing to disclose his representation of Juror Two's father in litigation.

Defense counsel argues that in 1986 he entered an appearance as defense counsel on behalf of the juror's father. Counsel claims that, as managing partner, his name appears on pleadings but does not reflect his involvement in the case. Counsel did not personally participate in argument or presentation of the evidence during trial. This court reversed that judgment and remanded the case for a new trial. That case was settled in February 1993, but counsel had not been personally involved since 1989.

The trial court did not err in failing to find misconduct on the part of defense counsel, since there was no misconduct on the part of defense counsel. R.C. 2313.42(H) [3] excludes jurors if one of the attorneys involved in the litigation is representing a family member in a pending matter. The case involving Juror Two's father was not pending at the time that this case went to trial. Even assuming the same principle should be applied to a recently dismissed case, it had been years since defense counsel had been personally involved in the case defending the juror's father. Under these circumstances, no misconduct on the part of defense counsel was demonstrated. Plaintiffs' second assignment of error is not well taken.

By the third assignment of error, plaintiffs contend that the trial court erred in denying their motion for new trial, where the record raised doubt about the impartiality of Juror Two, and where the trial court ruled before receiving their supplementary filings. This assignment of error is rendered moot by our ruling on the first and sixth assignments of error.

---

3. R.C. 2313.42(H) provides as follows:

"The following are good causes for challenge to any person called as a juror:

"* * *

"(H) That he or his spouse, parent, son, or daughter is a party to another *action then pending* in any court in which an attorney in the cause then on trial is an attorney, either for or against him * * *." (Emphasis added.)

■ By the fourth assignment of error, plaintiffs contend that the trial court erred by interrupting plaintiffs' counsel during closing argument and restricting that argument to thirty minutes. Although plaintiffs argue that counsel was unable to discuss fully the issues involved in the case within the allotted time, the time restriction was imposed through a pretrial order. It is incumbent upon counsel to object to the order and convince the trial court that more time is necessary for closing argument. However, counsel did not do so but merely failed to organize his argument so as to complete it within the time restriction. Since counsel failed to make timely objection to the restriction, plaintiffs are precluded from raising the issue on appeal. The fourth assignment of error is not well taken.

■ By the fifth assignment of error, plaintiffs contend that the trial court erred by unduly emphasizing the issue of proximate cause in its instructions. In its instructions, the trial court stated as follows:

"To establish the survivorship claim on behalf of Autumn Jenkins and Teresa Jenkins plaintiffs must prove by a preponderance of the evidence three essential elements: That one or both of the defendants were negligent, that such negligence proximately caused injuries, and that Autumn Jenkins or Teresa Jenkins sustained damages during their lifetimes and before their deaths.

"This is not written, but I want to emphasize it. That phrase was proximately caused. Studies say that a lot of people hear approximately. Proximate cause is a word of art which I will explain to you. It's in the written instructions you will get."

The trial court should avoid repeating instructions because the repetition emphasizes particular aspects of the instruction. In the syllabus of *Am. Steel Packing Co. v. Conkle* (1912), 86 Ohio St. 117, 99 N.E. 89, the Supreme Court of Ohio held:

"The right given counsel by the provisions of section 5190, Revised Statutes, to present to the court written instructions on matters of law, and request that they be given to the jury before argument to the jury is commenced, should be exercised reasonably. *The instructions thus requested* should be neither excessive in number or length, *nor should they be, to an unreasonable degree, repetitions of the same legal proposition.* The giving of instructions which offend against either of these objections is an abuse of discretion, and is error which, when clearly prejudicial, will justify a reversal of a judgment obtained by the party thus asking the instructions." (Emphasis added.)

In this case, the trial court clearly emphasized the concept of proximate cause. There was no need to emphasize the word "proximate" by explaining that it was not "approximate," especially in light of the fact that the jury instructions were

written. However, no prejudice has been demonstrated, and in any event there will be a new trial because of our ruling on the first and sixth assignments of error. Therefore, plaintiffs' fifth assignment of error is not well taken.

■ By the sixth assignment of error, plaintiffs contend that the trial court erred by excluding testimony about statements made by Teresa Jenkins ("the decedent") concerning instructions she received from defendant Bazzoli regarding the nature of her treatment at her March 21, 1990 visit to defendant Bazzoli's office. Plaintiffs attempted to introduce testimony from both the decedent's grandmother and her aunt concerning the treatment she received from defendant Bazzoli at the March 21, 1990 office visit. Plaintiffs were attempting to show that decedent complained of back pain at her office visits.[4] Defendant Bazzoli's office procedure, however, did not keep records of patient complaints. Patient complaints were listed on the top of a billing/medical record document that was called an "encounter form." After the visit, one copy was given to the billing department and one copy to the patient. The top of the form was torn off and no copy was placed in a patient's file.

Plaintiffs' evidence consisted of testimony by both decedent's grandmother and her aunt that decedent made statements about her March 21, 1990 visit to defendant Bazzoli's office. The testimony was that decedent stated that defendant Bazzoli was in a hurry because he was leaving the next day on a vacation, and he referred decedent to a chiropractor for her back pain. The admissibility of this evidence was raised in a pretrial motion *in limine* filed by plaintiffs. The trial court ruled that the evidence was inadmissible as hearsay.

The Supreme Court of Ohio stated in the second paragraph of *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." That court has also stated in *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281, that, "unless it [the trial court] has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." See, also, *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493; *Karst v. Goldberg* (1993), 88 Ohio App.3d 413, 623 N.E.2d 1348.

■ "Hearsay" is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The evidence rules specifically

---

4. Back pain is significant because it is one of the symptoms of pyelonephritis.

exclude hearsay testimony from admission into evidence by Evid.R. 802, which provides as follows:

"Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

Plaintiffs contend that this evidence is admissible as an exception to the hearsay rule as set forth in Evid.R. 804(B)(5), which provides as follows:

"(B) Hearsay Exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

" * * *

"(5) *Statement by a Deceased or Incompetent Person.*  The statement was made by a decedent * * * where (a) the estate or personal representative of the decedent's estate * * * is a party, and (b) the statement was made before the death * * * and (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *."

The Supreme Court of Ohio discussed Evid.R. 804(B)(5) at length in *Johnson v. Porter* (1984), 14 Ohio St.3d 58, 14 OBR 451, 471 N.E.2d 484.  That court recognized that Evid.R. 601 abrogated R.C. 2317.03, the "dead man's" statute, which disqualified the testimony of an adverse party in a suit involving the executor of a decedent's estate.  Thus, an adverse party may not testify against a decedent who is a party to the action through representation.  Evid.R. 804(B)(5) makes an exception to the hearsay rule for statements made by a decedent when the statements meet the requirements set forth in the rule.  See, also, *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 542 N.E.2d 654.  As previously stated by this court in *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 337, 441 N.E.2d 845, 851:

" * * * Evid.R. 804(B)(5) compensates the parties substituted for the decedent by making a hearsay exception for declarations by the decedent which rebut testimony by an adverse party on a matter within the knowledge of the decedent. This allows the decedent to 'speak from the grave.' "

In this case, even though the statements made by decedent to her grandmother and her aunt arguably meet the requirements set forth in Evid.R. 804(B)(5), the trial court did not abuse its discretion by excluding the testimony about the statements.  Evid.R. 804(B)(5) requires that the statements were made by a decedent, that the decedent's estate is a party, that the statements were made before death, and that the statements are offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent.  Defendants argue that the statements offered did not rebut the testimony of Dr. Bazzoli and,

therefore, the statements are inadmissible. However, the doctor testified that he had no independent recollection of the office visits with decedent. He stated on cross-examination:

"Q. Again, Dr. Bazzoli, you have no independent recollection of sitting down and talking to Teresa Jenkins, right?

"A. I have no recollection that I did or I didn't.

"Q. You have no recollection of prescribing any treatment for her, do you?

"A. For what purpose? Independent recollection?

"Q. Independent?

"A. No."

The testimony does rebut the direct testimony of the adverse party, defendant Bazzoli. Neither defendant's testimony nor his medical records indicated the nature of his treatment. Rebuttal evidence is admissible to rebut not only direct assertions of a witness but, also, the reasonable inferences that may arise from the testimony of a witness. From the doctor's testimony and other defense evidence, a reasonable inference could be drawn that decedent had not complained of her back, and defendant gave no instructions to the decedent as to the treatment she should receive. Her testimony would rebut any such inference from the evidence presented by defendant.

Nevertheless, whether to make inferences lies within the sound discretion of the trier of facts. Likewise, whether to admit otherwise hearsay evidence which rebuts not direct testimony of an adverse party but, instead, only a possible inference that may be drawn therefrom, lies within the sound discretion of the trial court. Even though the trial court might not have abused its discretion if it had admitted such testimony, it likewise did not abuse its discretion in excluding it. Plaintiffs' sixth assignment of error is not well taken.

For the foregoing reasons, plaintiffs' motion to "correct" record is overruled, and defendants' motion to strike documents attached to that motion is sustained; plaintiffs' first assignment of error is sustained, the second, fourth, fifth and sixth assignments of error are overruled, and the third assignment of error is moot; the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion. Costs are assessed against defendants.

*Judgment reversed*
*and cause remanded.*

BOWMAN and CLOSE, JJ., concur.