DECISION AND JUDGMENT ENTRY
 STATEMENT OF THE CASE
On July 3, 1997, a Highland County Grand Jury returned a seventeen count indictment against appellant, Gary E. Mayer, Sr. The indictment charged appellant with six counts of rape in violation of R.C. 2907.02, one count of attempted rape in violation of R.C. 2923.02, and ten counts of gross sexual imposition in violation of R.C. 2907.05.
The state alleged that appellant committed numerous sexual assaults upon seven young girls from four separate families. Counts 1 through 12 of the indictment allegedly occurred between April 1997 and June 1997. Counts 13 through 17 allegedly occurred between January 1995 and July 1996.
The case was tried to a jury, beginning on March 15, 1999. On March 25, 1999, the jury returned its verdict, finding appellant guilty as charged in Counts 1 through 12 and Count 14 of the indictment. The jury found appellant not guilty of Counts 13, 15, 16 and 17 of the indictment.
The trial court sentenced appellant to serve a total of ninety-four to one hundred years in prison. The court imposed definite terms of ten years on each of the six charges of rape set forth in Counts 1, 3, 5, 7, 9, and 11 of the indictment, as well as definite terms of five years as to each of the six charges of gross sexual imposition set forth in Counts 2, 4, 6, 8, 10, and 12 of the indictment. On the charge of attempted rape, Count 14 of the indictment, the trial court sentenced appellant to an indefinite sentence of four to ten years. The court ordered that appellant serve all of the sentences consecutively.
Appellant timely filed his appeal, setting forth three assignments of error for our consideration:
 THE TRIAL COURT ABUSED ITS DISCRETION BY DETERMINING THAT A.F. WAS COMPETENT TO TESTIFY. SAID RULING VIOLATED EVID.R. 601 AS WELL AS THE STATE AND FEDERAL CONSTITUTIONS AND DENIED DEFENDANT-APPELLANT HIS RIGHT TO A FAIR TRIAL.
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO EXCUSE A JUROR FOR CAUSE DUE TO AN INCIDENT WHICH OCCURRED DURING TRIAL. THIS FAILURE DENIED DEFENDANT HIS RIGHT TO AN IMPARTIAL JURY WHICH, IN TURN, DENIED HIM HIS RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.
After careful review of each of these assignments of error, we find them to be without merit. Accordingly, we OVERRULE appellant's three assignments of error and AFFIRM the judgment of the court below.
 I
Appellant, in his First Assignment of Error, challenges the finding by the trial court that the child witness A.F. was competent to testify. Appellant was charged with three counts of rape and three counts of gross sexual imposition upon A.F. for incidents occurring between April 1, 1997, and June 15, 1997. At the time of these incidents, A.F. was six years old. At the time of the trial, she was eight years old. Appellant contends that the trial court abused its discretion by determining that A.F. was competent to testify, thereby violating the terms of Evid.R. 601. Appellant cites State v. Frazier (1991), 61 Ohio St.3d 247,574 N.E.2d 483, in support of his argument.
We begin with a review of Evid.R. 601, which states that, "Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). The Supreme Court of Ohio has had the opportunity to examine this rule and its application a number of times in recent years. In State v. McNeill (1998), 83 Ohio St.3d 438, 700 N.E.2d 596, the state charged McNeill with robbery and murder. McNeill confronted the victim in his car on a city street in Lorain. A number of children at a nearby playground witnessed the incident. On appeal of his conviction for murder, McNeill challenged the competency of two of these witnesses, aged six and seven. In sustaining McNeill's conviction, the Supreme Court of Ohio stated, "In determining the competence of a child witness, the trial court must consider the child's ability to receive, recall, and communicate accurate impressions of fact, understand truth and falsity, and appreciate the responsibility to tell the truth." Id. at 442,700 N.E.2d at 603 (citation omitted).
"The critical significance of the determination of a young child's competency to testify in a sexual abuse prosecution cannot be understated." State v. Robinson (Nov. 13, 1997), Franklin App. No. 97APA05-646, unreported, citing State v. Storch (1993), 66 Ohio St.3d 280,612 N.E.2d 305. Therefore, application of the test established by the Supreme Court of Ohio to determine a child's competency in State v.Frazier, supra, is required:
In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.Frazier, syllabus.
The trial court must conduct a voir dire to determine, in its discretion, whether the child is competent to testify. Id. at 250-251,574 N.E.2d at 486-487. The child's appearance, demeanor, manner of answering questions posed, and the presence or absence of indications of coaching are factors the trial court should consider in determining a child's competence to testify. Frazier; State v. Wilson (1952),156 Ohio St. 525, 103 N.E.2d 552.
In the case sub judice, the record indicates that the trial court conducted a voir dire of A.F. in order to evaluate her competence to testify. Appellant's trial counsel was also permitted to examine the child during the voir dire. It is as a result of the record of this examination that appellant now questions the trial court's finding that A.F. was competent to testify at trial.
Appellant contends that A.F. clearly testified that she could not remember events that occurred when she was six (her age at the time when the incidents in the indictment took place). Appellant notes that A.F. stated that her memory was "well, not very good."
However, from the record of the voir dire, we find that the trial court properly concluded that A.F. had an understanding of truth and falsity and an appreciation of her responsibility to be truthful. We also find that the record demonstrates that A.F. had the ability to receive accurate impressions of fact, or to observe acts about which she would later testify to at trial. The record also supports a finding that A.F. had the capacity to recollect those impressions or observations and to communicate what she observed. A critical portion of the required voir dire of A.F. follows:
 The Court: Okay, that's good. Do you remember things pretty well in school?
A.F.: Sort of.
 Well, if somebody talks to you or reads a story to you or something do you remember those things?
 I can't remember the whole story or something, but I can remember sometimes.
 Q. Well, when your friends talk to you do you remember what you talked about?
A. I don't know, probably.
Q. Sometimes and sometimes not, it that it?
A. Yes.
Q. Well, that happens to everybody, doesn't it?
A. Yes.
Q. Do you remember things that happened a long time ago?
A. Yes.
Q. Pretty well?
A. Sort of, not much.
 Q. You say not much, sometimes? Sometimes you remember and sometimes you don't?
A. Yes.
 Q. We are going to ask some questions after awhile and you can remember those things pretty well?
A. I'll try.
Appellant's counsel then had the opportunity to examine the child:
 Counsel: See what I am concerned about is that we will be asking you about things that happened two years ago and you have told us honestly that you might not remember, is that what I am hearing you say?
A.F.: I might not remember everything.
You might not remember everything, but you'll remember some?
Yes.
At the time of trial, A.F. was eight years old. A witness who is at least ten years old is presumed competent to testify. Evid.R. 601(A). No such presumption applies to either the competence or incompetence of witnesses under ten years of age. State v. Clark (1994), 71 Ohio St.3d 466, 469,644 N.E.2d 331, 334. Rather, the proponent of such a witness must establish that the witness is capable of receiving just impressions of fact, and of relating those impressions truthfully. Id.
Our standard of review, as appellant notes, is one of abuse of discretion. The trial court has the opportunity to question the child in person, which allows the court to make observations about the child's testimonial competence that an appellate court cannot make by reviewing a written record. See Frazier, 61 Ohio St.3d at 251, 574 N.E.2d at 487. As a result, we will not reverse the trial court's determination of a child's competence to testify absent an abuse of discretion. Clark,71 Ohio St.3d at 469, 644 N.E.2d at 334. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, 1184. An "abuse of discretion" is more than an error of law or of judgment, the term connotes that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Moreland (1990), 50 Ohio St.3d 58, 61,552 N.E.2d 894, 898.
In the case sub judice, A.F. told the court that she was eight years old, but that she would turn nine the following June. She stated that she was in third grade and that her favorite subject was math. The trial court questioned A.F. extensively about telling the truth, and A.F. stated that she would get in trouble if she did not tell the truth. The court also asked A.F. if she remembered things that happened a long time ago and she responded, "Sort of, not much." When pressed on this issue, A.F. told the court that sometimes she remembers things and sometimes she does not, but that she would tell the truth about what she remembered and she would tell the court if she did not remember something.
From our review of the record, it is clear that there is sufficient evidence for the trial court to conclude that A.F. understood the difference between truth and falsity, as well as her obligation to tell the truth in court. The record is somewhat less clear regarding A.F.'s ability to receive accurate impressions of fact and to recollect and communicate those impressions. Nevertheless, nothing in the record indicates that A.F. was not capable of accurately perceiving, remembering, and communicating facts. The trial court, having interviewed A.F. in person, was in a far better position than this court to evaluate the child's competence. We find that the trial court did not abuse its discretion by ruling that A.F. was competent to testify.
We note appellant's argument that A.F. was incompetent to be a witness because she could not remember everything that happened to her at age six. In State v. Mayhew (1991), 71 Ohio App.3d 622, 629, 594 N.E.2d 1133,1137, this court wrote:
 Once the court determines that a person can properly recount events from the past and knows that she should tell the truth in court, she is competent. Whether or not her testimony at trial is believable is another issue. That is for the trier of fact to decide after hearing the testimony.
In the case sub judice, the fact that A.F. could not remember everything that happened to her when she was six years old does not affect her competence to testify. We would not expect even an adult witness to have a perfect memory. The key issue is whether or not A.F. was able to receive just impressions of fact and to truthfully relate those impressions in court. The fact that she may or may not have remembered certain details relates to her credibility as a witness, not to her competence to testify.
Accordingly, we OVERRULE appellant's First Assignment of Error.
 II
In his Second Assignment of Error, appellant attacks both the sufficiency of the evidence and the weight of the evidence that led to his conviction. App.R. 16 requires appellant to support his assignments of error with specific citations to those portions of the trial record where those errors are reflected. In support of his First and Third Assignments of Error, appellant provided us with such specific citations to the trial transcript. However, other than to direct us to the trial testimony of the child witness A.F., no specific citations to the record were provided in support of the Second Assignment of Error. We have, nonetheless, reviewed the entire trial transcript as requested by appellant.
As appellant notes, the Supreme Court of Ohio has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.
"In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. at 386, 678 N.E.2d at 546. Unlike determinations of fact, which are given great deference, questions of law are reviewed by an appellate court denovo. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Id. at 390,678 N.E.2d at 549 (Cook, J., concurring). "In a review for sufficiency following a conviction, we must consider the evidence in a light most favorable to the prosecution." State v. Hill (1996), 75 Ohio St.3d 195,205, 661 N.E.2d 1068, 1079, citing Jackson v. Virginia (1979),443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
"Relevant inquiry" does not include interpretation of evidence or determination of credibility of witnesses by the appellate court. Id. at 273, 574 N.E.2d at 503. The evaluation of the weight of the evidence and credibility of witnesses are jury issues. State v. Waddy (1992),63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
In contrast, when "deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion."Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d at 549 (Cook, J., concurring). When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs v. Florida
(1982), 457 U.S. 31, 42, 72 L.Ed.2d 652, 661, 102 S.Ct. 2211, 2218. Because the trier of fact is in a better position to observe the demeanor of witnesses and weigh their credibility, "the only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d at 549
(Cook, J., concurring), citing DeHass, supra, at paragraph one of the syllabus.
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
In the case sub judice, the jury found appellant guilty of all six counts of rape and the one count of attempted rape contained in the indictment. "Rape" is defined at R.C. 2907.02(A) as follows:
 (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
R.C. 2907.01(A) defines "Sexual Conduct":
"Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
In addition, the jury in this case found appellant guilty of six counts of gross sexual imposition. "Gross Sexual Imposition" is defined at R.C.2907.05(A):
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
"Sexual contact" in turn, is defined at R.C. 2907.01(B):
 "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
We will briefly examine the evidence presented in support of these charges. The jury found appellant guilty of thirteen of the original seventeen counts set forth in the indictment. The charges of which appellant was found guilty by the jury involved four girls under the age of thirteen: A.F., sisters A.M. and L.M., and a fourth child, J.Fr. We will briefly review the evidence presented in support of each of these charges for both weight and sufficiency, beginning, as suggested by appellant, with the charges that involved A.F.
 SECTION A — COUNTS 7 THROUGH 12: A.F.
The indictment charged appellant with three counts of rape and three counts of gross sexual imposition upon A.F. Counts 9 and 11 (rape), and 10 and 12 (GSI), of the indictment occurred in Ross County between April 1, 1997, and May 15, 1997. A.F. was in the custody of her father during this time period but visited her mother, a Ross County resident, every other weekend. During this same time period, appellant rented a room in a private residence in Hillsboro, Ohio, where B.D., A.F.'s grandmother, also resided.
A.F.'s mother, who is disabled, testified that she was living in a low-income housing development in Ross County. In April 1997, she had been assigned a two-story apartment, while awaiting a single story apartment to become available. Appellant drove A.F.'s grandmother, B.D., from Hillsboro to Ross County on one of the weekends that A.F. visited her mother. During this weekend, appellant slept in an upstairs bedroom, while B.D., A.F. and her mother slept on a pallet in the living room. A.F. testified that appellant engaged in acts of cunnilingus and fellatio with her in his bedroom, while her mother and grandmother were not at home.
Shortly after this incident, A.F.'s mother moved into a ground-floor apartment at this same complex. Sometime in May, appellant again drove B.D. to visit her granddaughter. A.F. testified that on this occasion appellant once again accosted her while her mother and grandmother were shopping.
In May 1997, appellant moved into the residence of J.M., who resided in a farmhouse located in rural Highland County with her two daughters, A.M. and L.M. At about this same time, B.D. also moved into this farmhouse. The final two counts involving A.F., Count 7 (rape) and Count 8 (gross sexual imposition) of the indictment, occurred in June 1997 at J.M.'s Highland County residence, while A.F. was visiting her grandmother, and involved acts of cunnilingus and fellatio. These actions by appellant, which occurred in appellant's van and on a lounge chair in the side yard of J.M.'s residence, were witnessed by both A.M. and L.M.
A.F. testified concerning three incidents in which appellant molested her. She further testified that each incident involved acts of cunnilingus and fellatio, as well as general touching of A.F.'s vagina and buttocks. As noted in the First Assignment of Error, A.F. was six years old at the time that these incidents occurred. Construing this evidence in a light most favorable to the state, a rational trier of fact could conclude that, in each instance, appellant engaged in acts of sexual conduct and sexual contact with a person under thirteen years of age. Thus, we find the evidence presented to be legally sufficient to support appellant's convictions for rape on Counts 7, 9, and 11, and for gross sexual imposition on Counts 8, 10, and 12 of the indictment.
In arguing that his conviction is against the manifest weight of the evidence, appellant attacks A.F.'s competence as a witness. Our evaluation of A.F.'s testimony is limited to the printed record, and that record supports the trial court's finding that the child was a competent witness. In assessing the weight of her testimony, we are not in a position to judge the credibility of A.F. as a witness. That is the role of the jury. We have not found, nor has appellant cited to us, any examples of inconsistency or ambiguity in A.F.'s testimony which indicate that the jury lost its way in arriving at its verdict on Counts 7 through 12. We note that A.F.'s testimony as to Counts 7 and 8 is corroborated by the testimony of the sisters, A.M. and L.M. Therefore, we find appellant's convictions for rape and gross sexual imposition contained in Counts 7 through 12 of the indictment to be supported by the manifest weight of the evidence.
 SECTION B — COUNTS 1 THROUGH 6: A.M. AND L.M.
In June 1997, A.M. and her twin sister L.M. were age ten. They lived with their mother, J.M., in a farmhouse owned by their father, J.M.'s ex-husband. This house, located in rural Highland County, was isolated, the nearest neighbor being a farmer who rented the land and who would occasionally use a barn about one hundred yards distant from J.M.'s house. There was a large metal "slaughter" tub beside the house, improvised for use as a swimming pool for the children. Appellant's van was parked near this tub, and appellant stretched tarps in such a manner that the view of the yard from the road was blocked. The tub, and part of the van, could be viewed from inside one of the bedrooms in the house. This bedroom was used by B.D. The children's testimony indicated that B.D. would often sleep there during the day.
The other occupant of the house was appellant, who frequently babysat the children while J.M. was at work. On or about June 10, 1997, A.F. was visiting with her grandmother, B.D. The three children were playing in the side yard in this pool. A.M. testified that appellant engaged in acts of cunnilingus and fellatio upon her, her sister, and A.F. All these acts occurred in appellant's van and on a lounge chair situated beside appellant's van, both of which were situated near the improvised swimming pool, as described above.
L.M. testified along the same line as to the acts and events of June 10, 1997. Her testimony corroborated the testimony of her sister, A.M., as well as the testimony of A.F. Her testimony described the same acts by appellant, which occurred in appellant's van and on the adjacent lounge chair.
On June 16, 1997, the day of appellant's arrest, A.M. and her mother were running errands, and L.M. was left in the care of appellant. L.M. testified that appellant again engaged in cunnilingus and fellatio with her. She further testified that some of appellant's semen got on her underwear. The state presented witnesses from the Bureau of Criminal Identification who testified that a hair sample found on this underwear was of a similar hair type as the chest hair of appellant. The state also presented a DNA test report and expert testimony that indicated the DNA extracted from the semen found on L.M.'s underwear matched the genetic profile of appellant.
Construing this evidence in a light most favorable to the state, a rational trier of fact could conclude that, in each instance involving A.M. and L.M., appellant engaged in acts of sexual conduct and sexual contact with a person under thirteen years of age. A.M. and L.M. testified that appellant touched their genitals and engaged in acts of cunnilingus and fellatio with them in the van and on the adjacent lounge chair. L.M. testified that appellant committed similar acts upon her on the day of his arrest. The girls, who are twin sisters, were both ten years old at the time of these incidents. Thus, we find the evidence presented to be legally sufficient to support appellant's convictions on Counts 1 through 6 of the indictment.
As with A.F., there is nothing in the record that leads us to question the credibility of L.M. and A.M. The girls corroborated each other's testimony, as well as A.F.'s testimony. The forensic evidence presented at trial provided further corroboration for their testimony. This is not a case in which the evidence weighs heavily against appellant's conviction. Thus, we find that appellant's convictions on Counts 1 through 6 of the indictment are not against the manifest weight of the evidence.
 SECTION C — COUNT 14: J.FR.
At trial, J.Fr., then age fourteen, testified that appellant had been a friend of her mother for seven years. J.Fr., her two younger sisters, and two younger brothers moved to Hillsboro in June 1995. Appellant moved in with the family shortly thereafter, babysitting the children while J.Fr.'s mother worked. Appellant stayed with the family until February 1997, at which time he moved to the previously described boarding house in Hillsboro.
The indictment charged appellant with gross sexual imposition (Count 13) and attempted rape (Count 14) of J.Fr. sometime after July 1996. At trial, J.Fr. testified to several incidents of sexual contact by appellant upon her and her sisters but was unable to offer specific times or details when this contact occurred. The jury acquitted appellant of the gross sexual imposition charge contained in Count 13 of the indictment.
J.Fr. did testify to one specific incident in 1996, when she was under the age of thirteen. At that time, she shared a bedroom with her two sisters on the ground floor of their residence. She awoke to find appellant rubbing her back with his penis. When she turned over, appellant fled the bedroom. Based on this testimony, the jury convicted appellant of attempted rape of J.Fr., as charged in Count 14 of the indictment.
A person is guilty of attempt if he or she purposely or knowingly engages "in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Appellant's actions did not constitute sexual conduct, as defined in R.C. 2907.01(A), so he would not be guilty of rape. However, appellant slipped into bed with J.Fr. and rubbed his penis on her back. It is reasonable to infer from these actions that appellant intended to engage in sexual intercourse with J.Fr., which would have constituted rape, as J.Fr. was under thirteen years of age at the time of the incident. Construing the evidence in a light most favorable to the state, a rational trier of fact could find that appellant purposely engaged in conduct that, if successful, would have resulted in the rape of J.Fr. Thus, we find that there is sufficient evidence to support appellant's conviction for attempted rape, as charged in Count 14 of the indictment
Again, there is nothing in the record that causes us to second-guess the jury's verdict on Count 14 of the indictment. Appellant's actions provide circumstantial evidence from which the jury could reasonably infer that appellant would have engaged in sexual intercourse with J.Fr. had she not awakened. As with appellant's convictions for rape and GSI, the evidence does not weigh heavily against appellant's conviction for attempted rape. We find, therefore, that appellant's conviction on Count 14 of the indictment was not against the manifest weight of the evidence.
Accordingly, we OVERRULE appellant's Second Assignment of Error.
 III
In his Third Assignment of Error, appellant argues prejudice by the failure of the trial court to excuse a juror and replace that juror with an alternate. During the direct examination of one of the child-witnesses, one juror observed appellant mouth the words "I love you" to the witness. The juror reported her observations to the trial court.
The transcript indicates that appellant was prone to outbursts. Indeed, his testimony was videotaped out of the presence of the jury, then replayed to the jury in court, in an effort to prevent a possible mistrial. After this juror reported her observation to the trial court, she was interviewed by the court in chambers, in the presence of counsel. After the court excused this juror from this conference and inquiry in chambers, appellant's counsel requested the removal of that juror and a poll of the other jurors. The court inquired of each of the other jurors individually whether they had observed anything, either in or out of courtroom, which would cause them to question their ability to be a fair and impartial juror. From the record, it appears that none of the other jurors observed this conduct on the part of appellant. The trial court indicated that it was satisfied that the jury was untainted. Accordingly, the court denied appellant's motion to remove the juror who had observed appellant's conduct.
Appellant argues that the failure of the trial court to replace this juror with an alternate prejudiced him. Appellant is unable to cite any case directly on point, nor could appellee do so. Appellant argues that he is entitled to a jury composed of impartial and unbiased jurors, citing Murphy v. Florida (1975), 421 U.S. 794, 44 L.Ed.2d 589,95 S.Ct. 2031, and Lingafelter v. Moore (1917), 95 Ohio St. 384, 117 N.E. 16, paragraph two of the syllabus.
A case from the Second Appellate District presents us with a factual situation that, while not precisely on point, is similar to the fact situation in the instant case. In State v. Jones (Sept. 12, 1997), Montgomery App. No. 16123, unreported, the state charged the defendant with the murder of one Reuben Mendoza. The state called Marc Mendoza, the victim's brother, as a witness. Upon his entry into the courtroom, one juror, a teacher, recognized Marc Mendoza as a teacher's aide with whom she had worked closely during the school year. After questioning the juror in chambers, the trial court allowed her to remain on the panel. The juror's assertions in her voir dire satisfied the trial court that she could judge the case solely on the facts and evidence presented to her.
On appeal, the defendant argued that the trial court acted to his prejudice when it allowed that juror to remain on the panel. The appellate court disagreed, finding "the trial court acted properly by vigorously questioning the juror upon learning that she knew the victim's brother."Id., citing Jenkins v. Bazzoli (1994), 99 Ohio App.3d 421, 426-427,650 N.E.2d 966, 969-970.
We recognize that "[f]undamental principles of constitutional law require that a state criminal violation shall be tried to a panel of fair and impartial jurors." State v. Rose (June 30, 1995), Montgomery App. No. 14502, unreported. In Rose, the issue was juror misconduct. The state charged Rose with the rape of his fourteen-year-old stepdaughter. On the evening of the rape, the victim had consumed several pills, including a muscle relaxant and a prescription drug called "Soma." During the trial, the judge observed a juror carrying a book that appeared to be a guide to medical prescriptions.
The Rose court found that not every instance of juror misconduct necessitates a new trial. Rather, a court should grant a new trial as a result of juror misconduct if the misconduct materially affected a substantial right of the defendant. Id., citing State v. Hipkins (1982),69 Ohio St.2d 80, 83, 430 N.E.2d 943, 945; and State v. Kehn (1977),50 Ohio St.2d 11, 19, 361 N.E.2d 1330, 1335. In Kehn, the Supreme Court of Ohio stated, "It is a long-standing rule of this court that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." Kehn, 50 Ohio St.3d at 19,361 N.E.2d at 1335. See, also, State v. Sheppard (1998), 84 Ohio St.3d 230,703 N.E.2d 286.
Here the issue is not juror misconduct, but possible juror bias. As appellee notes, a new trial is not required every time a juror is placed in a compromising situation. "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror." State v. Phillips (1995),74 Ohio St.3d 72, 88, 656 N.E.2d 643, 660. A court may, of course, as a result of proper inquiry, determine that a juror's impartiality has remained unaffected, based upon that juror's testimony. Id.
Further, as the appellee notes, appellant must demonstrate that he has been prejudiced by the trial court's decision to allow the juror to remain on the panel. "Where there has been irregularity or misconduct on the part of the jury, which might affect its judgment, or improperly influence the verdict, a new trial should be granted. Where, however, it clearly appears that no improper effect could arise from the alleged misconduct, the verdict should stand." Armleder v. Lieberman (1877),33 Ohio St. 77, paragraph one of the syllabus. However, the trial court "must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." United Statesv. Rigsby (C.A.6, 1995), 45 F.3d 120, 125. See, also, United States v.Wells (C.A.6, 1998), 162 F.3d 1162. United States v. Zelinka (C.A.6, 1988), 862 F.2d 92, provides a four-point test for the adequacy of the investigation by the trial court arising from a report of possible juror bias. First, the trial court must hold a hearing to determine whether an alleged improper contact with a juror has tainted the trial. Second, the trial court does not presume that the defendant was prejudiced by such a contact. Third, the defendant bears the burden of proving that a juror is actually biased as a result of the contact. Fourth, the trial court may rely on the juror's assessment of his or her own feelings of bias. Id. at 95-96.
Here the trial court conducted a voir dire of this juror:
 The Court: * * * Because of what you saw does that cause you to, well, does it color your thinking about the merits of the case?
 The Juror: I would be afraid to say yes or no on that because I don't, I'm afraid it might because, you know, because the little girl is scared to death and, you know, I didn't see that helping her any. So I can't say that it won't.
 Do you feel that that keeps you from being a fair and impartial juror in this case?
 I would hope that it wouldn't. Like I said, I can't be one hundred percent sure, I mean, I just don't want to say for sure, I wouldn't want it to in the long run, it shook me.
Counsel for Appellant: You said it shook you?
Yes, that's what I said, it shook me.
 The Court: Do you feel that you would be able to set that aside and hear the testimony and all of the evidence, all of the whole case, in other words?
I think I can, I really do.
And set that aside and still be fair and impartial?
 I think I can, like I said, I don't want him to think that, you know, that could have changed it because I seen that. I mean, I don't want him to think it wasn't fair to him. And I don't want that to cause trouble after this is all done because, you know, this is a lot of time and a lot of work that everybody put into this, I don't want to be the one to mess it up for anybody.
Later, the prosecutor, Rocky Coss, inquired of this juror:
 Mr. Coss: * * * Do you feel that even though you reported this, and we're glad you did, do you think that if instructed to put that aside and decide this case based strictly on the testimony and the evidence submitted and the law the Judge gives you that you can do that even though you have the knowledge of this, do you think that you can set it aside and based it on the evidence and the law?
 Yes, I do, I really do think I can, but like I said, I thought that I should let you know what I seen because I didn't want —
Mr. Coss: We appreciate that.
The trial court had the opportunity to observe the demeanor of the juror, and to evaluate firsthand the sincerity of her responses to questioning. She assured the trial court that she could be fair and impartial despite what she observed. Applying the four-part Zelinka
test, we find the trial court properly conducted a thorough and extensive voir dire of the juror after she had reported this improper contact by the defendant. It would not have been proper for the trial court to presume this contact resulted in bias or that the juror's testimony might be suspect. Nor may we.
The burden is upon appellant to demonstrate juror bias or prejudice. Appellant, through counsel, had every opportunity to inquire of this juror regarding any possible bias. The court inquired of the other jurors whether they had observed anything that same day that may have caused them to be less than impartial. None of the other jurors reported seeing the same incident reported by the first juror, nor any other incident, thereby establishing no taint to the impartiality of these jurors.
We find that appellant has failed to meet the burden necessary to demonstrate juror bias and prejudice to him in this action. We find, therefore, that the trial court did not abuse its discretion by allowing this juror to remain on the panel. Indeed, the trial court took all proper precautions to assure itself that no prejudice to appellant was present.
Accordingly, we OVERRULE appellant's Third Assignment of Error and AFFIRM the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Highland County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment Only.
Harsha, J.: Concurs in Part and Dissents in Part with Opinion.
 ________________________ David T. Evans, Judge